The STATE of Texas, Appellant,

v.

GAYLOR INVESTMENT TRUST PARTNERSHIP, Appellee.

No. 14–08–00539–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 2010.

---

Lisa Marie Nieman, Susan Desmariais Bonnen, Austin, for appellant.

H. Dixon Montague, George R. Murphy, Houston, for appellee.

Panel consists of Justices YATES, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

In this condemnation action, the trial court limited both the condemning authority and the landowner to one trial expert. On appeal, the condemning authority asserts that the trial court abused its discretion by not allowing the authority to call two additional experts to testify to alleged errors and deficiencies in the methodology and opinions of the landowner's expert, in addition to the authority's expert on the issue of the amount of compensation to be awarded to the landowner. Concluding there was no abuse of discretion, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In this condemnation action, appellant the State of Texas acquired 0.5256 acres of land for use in widening Interstate Highway 10. After the State filed its petition, the trial court appointed special commissioners, who conducted a hearing and assessed damages of $1.5 million under section 21.042 of the Texas Property Code. The landowner, appellee Gaylor Investment Trust Partnership, objected to the special commissioners' findings, triggering a trial de novo in the trial court.

Gaylor retained Mark Sikes of Lewis Realty Advisors as its expert. Sikes testified at trial that Gaylor should be awarded total compensation of $2,890,367. After Gaylor rested in its case-in-chief, the trial court ruled that Nelson Bowes and Larry Wright, two experts retained by the State, would not be allowed to testify at trial. The State then called expert Steve Fanning, who testified that Gaylor should be awarded total compensation of $520,500. The jury found that Gaylor should be

awarded $1,847,583, and the trial court rendered judgment on the jury's verdict.

## II. ISSUE PRESENTED

On appeal, the State asserts in a single issue that the trial court abused its discretion by excluding the testimony of Bowes and Wright.

## III. STANDARD OF REVIEW

A decision to admit or exclude evidence rests within the sound discretion of the trial court. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000) (per curiam). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *See id.* An abuse of discretion does not occur merely because the appellate court would have decided a discretionary matter in a different way than the trial court. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985).

## IV. ANALYSIS

### A. Did the State preserve error as to its appellate issue?

Gaylor asserts that the State did not preserve error as to its sole issue. Therefore, we review the record regarding the issue of the admissibility of Bowes's and Wright's testimony to determine if the State preserved error.

Three weeks before the beginning of trial, Gaylor filed a motion seeking to preclude the State from calling more than one appraisal expert to testify at trial. Gaylor based this motion on an affidavit from its attorney of record stating that "[o]n or about December 8, 2007, this Court ruled that Gaylor could have only one appraisal witness [and] was not allowed to add an additional appraisal expert in this proceed-

ing."[1] Gaylor's counsel further stated that "[a]t the same time, the Court advised the State that it may only use one appraisal witness at trial and instructed the State's counsel to provide counsel for Gaylor with the identity of that expert in the near future. To date, the State has not done so." Our appellate record does not contain a reporter's record from this hearing, and there is no written order in the record in which the trial court makes such a ruling.

In its motion, Gaylor asserted that, despite the trial court's prior ruling that only one appraisal expert could testify for the State, the State recently had stated in amended discovery responses that the State expected to call Fanning, Bowes, and Wright to testify at trial, and all of these witnesses are appraisal experts. The State responded in opposition to Gaylor's motion and asserted that (1) the trial court had not limited each side to one appraisal witness as claimed by Gaylor; (2) the State had attempted to obtain a reporter's record from the hearing in question but the court reporter was unable to provide one; (3) at the hearing in question, rather than limiting the State to one appraisal witness, the trial court questioned the State's need to call four expert "rebuttal witnesses," as the State planned to do; (4) in response to the trial court's concerns, the State indicated that it would limit its "live rebuttal witnesses at trial" to Bowes and Nelson; and (5) Bowes and Wright would not provide an opinion as to how much compensation the State should pay to Gaylor; instead, they would *rebut* Mr. Sikes' testimony using Mr. Sikes' own data." (emphasis in original).

In sum, Gaylor believed that the trial court had limited each party to a single

---

1. In the affidavit, counsel stated the ruling occurred "[o]n or about" December 8, 2007. But, in the motion, Gaylor stated that the ruling occurred "[o]n" December 8, 2007, which was a Saturday. On appeal, Gaylor asserts that the ruling occurred at a hearing on December 10, 2007.

appraisal expert, but the State contended that the trial court had made no such ruling. It appears that the State's counsel believed that the trial court would allow only one expert for each party regarding how much compensation the State should pay Gaylor ("Compensation Issue"). Nonetheless, the State's counsel appears to have believed that the trial court's limitation did not apply to any experts designated as "rebuttal witnesses" who would find fault with Sikes's opinions but not opine regarding the Compensation Issue. The record does not contain a ruling by the trial court on Gaylor's motion.[2]

At a hearing on February 18, 2008, the trial court discussed various pretrial matters with counsel. Counsel for the State indicated that Fanning would give an "opinion of value," and that Bowes's and Wright's testimony would be "rebuttal to Mr. Sikes' opinion." Counsel for the State said that Farming's "opinion of value" was "certainly not what Gaylor's opinion … is as to value." This reference to "Gaylor's opinion" apparently led the trial court to believe that Gaylor might be intending to call a Mr. Gaylor to testify as an expert. The trial court asked counsel for Gaylor if Mr. Gaylor would be testifying, and counsel for Gaylor said that Mr. Gaylor would not be testifying. The trial court then stated, "I was going to say, didn't we already go over this rule? One expert?"

Later during the same hearing, the trial court addressed whether Bowes and Wright would be excluded from the courtroom under "the Rule." In discussing Bowes and Wright, the trial court stated that "[e]ven though the Court has not decided that they're going to get to testify, that issue is still out there. Remember, I told you the more you talked about it the

less inclined I was given the reasons you were giving me?" The State responded "Your Honor, I know of no rule which would prohibit the State of Texas from putting on rebuttal experts." The trial court then suggested that the matters that the State wished to put on through Bowes and Wright should be addressed instead by Fanning's testimony or by the State's cross-examination of Sikes.

We conclude that, as of February 18, 2008, the trial court had limited each party to a single expert witness. The State had advanced the argument that the trial court should allow Bowes and Wright to testify as "rebuttal witnesses" who would find fault with Sikes's opinions but not opine regarding the Compensation Issue. Though the trial court had not yet addressed this argument, the trial court expressed skepticism about it and stated that it was inclined to require these matters to be addressed in Fanning's testimony or in the State's cross-examination of Sikes.

During trial a few days later, on February 21, 2008, at a bench conference during Gaylor's case-in-chief, the trial court asked the State to make an informal offer of proof so that the trial court could determine whether it would allow Bowes and Wright to testify. Counsel for the State described some of the matters that the State wanted Bowes and Wright to address in their testimony. The trial court stated the State had not yet shown that Bowes and Wright have knowledge of facts that would rebut Sikes's testimony. The trial court advised that it still was not going to let Bowes and Wright testify but that if something were to arise as to which their testimony would become necessary, the trial court would consider that argument. Though the trial court did not allow the State to make an offer of proof in a

---

**2.** According to a notice of hearing in our record, Gaylor's motion was set for hearing one week before trial; however, our record does not contain a reporter's record from any hearing on this motion and does not contain any evidence of a ruling on this motion.

question-and-answer format, the trial court stated that it would base its ruling on the State's summary of the proposed testimony and on any documents that the State tendered to the court reporter.

Four days later, the State began its case-in-chief. The trial court asked the State what it wanted to rebut through the rebuttal witnesses. The State responded that Bowes and Wright would rebut Sikes's methodology and conclusions and show why they are incorrect and not credible based on Sikes's own data. The State asserted that Bowes and Wright did not do their own appraisal but instead conducted a review of Sikes's appraisal. The State said that Wright would address all of the land sales used by Sikes in determining that the market value of the land was $45 per square foot and that Wright would explain why none of these sales should have been used to calculate the land value. The State said that these witnesses had not talked to any of the buyers and sellers and that they would not be testifying as to any facts. Rather, presuming the facts as stated by Sikes, Bowes and Wright would testify that the sales used by Sikes did not reflect market value because these sales "appear [ ] to suffer from influence or motivation on either the part of the buyer or the seller such that either one is not considered a willing buyer or a willing [seller]." The trial court stated that this type of testimony should be covered by the State's expert, Fanning, who had not yet testified. The State responded that it had a right not only to have Fanning testify as to the Compensation Issue but also to have other experts point out to the jury why the landowner's expert is not credible.

The trial court ruled that Bowes and Wright were excluded from testifying and instructed the State to provide any documents that it wanted included in its offer of proof to the court reporter. The State gave the court reporter various lengthy exhibits describing Bowes's and Wright's opinions. The following day, after Fanning testified but before the State rested, the State again asked that it be allowed to call Bowes and Wright. The trial court said that it had not changed its ruling, and the court again refused to allow the State to call these two witnesses.

During the evidentiary portion of the trial, the State attempted to call Bowes and Wright as expert witnesses. The State specified the purpose for their testimony and asserted that this testimony was admissible because the State alleged it had a right to call additional expert witnesses beyond Fanning to challenge the credibility and reliability of Sikes's analysis and opinions. The trial court twice ruled that it was excluding this testimony, and the State made the substance of this testimony known to the trial court by an informal offer of proof and related exhibits. We conclude that the State preserved error as to its sole appellate issue. *See Hunter v. NCNB Tex. Nat'l Bank*, 857 S.W.2d 722, 727 (Tex.App.-Houston [14th Dist.] 1993, writ denied).

**B.  *Did the trial court abuse its discretion by excluding the testimony of Bowes and Wright?***

■ In its sole issue, the State asserts that the trial court abused its discretion by excluding the testimony of Bowes and Wright. The State called this testimony "rebuttal testimony." But, because Gaylor had the burden of proof, the State did not have a rebuttal case during which it could call these witnesses. Instead, the State sought to call these witnesses during its case-in-chief to challenge the credibility and reliability of Sikes's analysis and opinions.[3] As discussed above, as of February

---

**3.** The State actually first sought to introduce       this evidence out of order during Gaylor's

18, 2008, one week before the trial court excluded this testimony, the trial court had limited each party to a single expert witness, and the State had advanced the argument that the trial court should allow Bowes and Wright to testify as "rebuttal witnesses" who would find fault with Sikes's opinions but not opine regarding the Compensation Issue. Though the trial court had not yet ruled on this argument, the trial court stated that it was inclined to require these matters to be addressed in Farming's testimony or in the State's cross-examination of Sikes.[4] The State did not argue or prove that it was unable to have Fanning testify to these matters. On appeal, the State suggests that Fanning could not have testified to these matters because he had not conducted a review of Sikes's appraisal. Presuming that such a review was necessary, the State did not argue or show that Fanning could not have conducted such a review in the week prior to trial court's ruling on February 25, 2008, that Bowes and Wright could not testify.

█ If the trial court allowed the State to call three experts at trial to testify to matters that could have been covered by a single expert, then Gaylor likely would want to call three experts as well, and fairness likely would require that Gaylor be allowed to call three experts. It is reasonable to conclude that a trial with six testifying experts would be longer and more costly to the parties and the judicial system than the same trial with two testifying experts. Under Rule 611 of the Texas Rules of Evidence, entitled, "Mode and Order of Interrogation and Presentation," the trial court "shall exercise reasonable control over the mode and order of

interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." TEX.R. EVID. 611(a). Every trial court has the inherent power to control the disposition of the cases on its docket " 'with economy of time and effort for itself, for counsel, and for litigants.' " *Hoggett v. Brown,* 971 S.W.2d 472, 495 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (quoting *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)). " 'How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' " *Metzger v. Sebek,* 892 S.W.2d 20, 38 (Tex.App.-Houston [1st Dist.] 1994, writ denied) (quoting *Landis,* 299 U.S. at 254–55, 57 S.Ct. at 166). The trial court's "inherent power," together with applicable rules of procedure and evidence, accord trial courts broad, but not unfettered, discretion in handling trials. *Hoggett,* 971 S.W.2d at 495; *Metzger,* 892 S.W.2d at 38.

The trial court had discretion to limit both sides to one expert trial witness. *See TH Invests., Inc. v. Kirby Inland Marine, L.P.,* 218 S.W.3d 173, 191 n. 20 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (concluding that trial court had discretion to limit both parties to one expert witness at trial); *Paselk v. Rabun,* 293 S.W.3d 600, 608–09 (Tex.App.-Texarkana 2009, pet. denied) (concluding that trial court had discretion to manage its docket and to limit a party to one expert witness and noting, in concluding that order was not a death-penalty sanction, that the party had not

case-in-chief, but the trial court refused to allow the State to do so.

4. The State was allowed to cross-examine Sikes as much as it wanted, with no time limit. The State's examination of Sikes consumes a total of more than 190 pages in the reporter's record.

shown that it needed more than one expert). The trial court told the State that it could challenge Sikes's testimony during the testimony of Fanning. The State argued in the trial court and on appeal that, even if Fanning could have addressed all of these matters in his testimony, the State had the right to divide the topics for expert testimony among three experts. The State has cited no case holding that such a right overrides the trial court's broad discretion in managing the trial.

The State relies on this court's opinion in *Hooper v. Chittaluru.* *See* 222 S.W.3d 103 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). In *Hooper,* an expert retained by a medical-malpractice defendant gave some testimony at his deposition that was favorable to the plaintiffs. *See id.* at 106–07. The plaintiffs previously had cross-designated the defendant's expert, and the day after the deposition, the plaintiffs supplemented their discovery responses to include references to the favorable deposition testimony. *See id.* The trial court refused to allow the plaintiffs to call the defendant's expert as a witness at trial, and therefore, the jury never heard the favorable testimony from the defendant's expert. *See id.* at 107. This court held that the trial court abused its discretion by excluding this testimony. *See id.* at 108–11. In doing so, this court rejected the argument that the expert's testimony was cumulative of the testimony of the plaintiffs' expert. *See id.* at 110–11. The *Hooper* court stated that, even presuming that the plaintiffs' expert gave testimony identical to the proffered testimony from the defendant's expert, the proffered testimony was not cumulative because it would have added substantial weight to the plaintiffs' case given that (1) the plaintiffs' expert was retained by the plaintiffs and arguably might be biased in favor of the plaintiffs, but the defendant's expert was retained by the defendant; and (2) the defendant's expert had better qualifica-

tions on the matter in question because he was a cardiologist and the plaintiffs' expert was an internist. *See id.* In the *Hooper* case, the trial court's ruling was based on a conclusion that (1) parties may not call an opposing party's expert to testify at trial, (2) the plaintiffs had not properly designed the defendant's expert as a witness, or (3) the plaintiffs did not timely disclose the opinions in question. *See id.* at 108–11. The *Hooper* case did not involve a trial court's exercise of discretion in limiting each party to one expert witness. *See id.* We conclude that *Hooper* is not on point.

The State also relies on this court's opinion in *In re N.R.C.* *See* 94 S.W.3d 799 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). This case involved a suit to terminate the parental rights of a mother as to her two children, in which the trial court issued a sanctions order barring the mother from calling any witnesses at trial other than herself. *See id.* at 803–04. The trial court issued this sanction based on the mother's failure to obey the court's order to pay $2,500 as security to cover the ad litem's fees. *See id.* at 804. This court held that the trial court abused its discretion in issuing this sanction. *See id.* at 808–13. In enforcing this sanctions order, the trial court refused to allow the mother to call three fact witnesses regarding the mother's parenting skills and whether termination of her parental rights was in the children's best interests. *See id.* at 805–06. The *N.R.C.* court stated that the mere fact that another witness may have given the same or substantially similar testimony does not make the testimony in question cumulative if the testimony would have added substantial weight to the party's case. *See id.* at 807. Noting the quasi-criminal nature of parental-termination cases and citing a case from the Court of Criminal Appeals, the *N.R.C.* court stated that the mother had the right to prove her

case in the most persuasive manner possible and that her defense might require several witnesses regarding the children's best interests. *See id.* at 807 & n. 3. The *N.R.C.* case did not involve a trial court's exercise of discretion in limiting each party to one expert witness. *See id.* at 803–07. We conclude that *N.R.C.* is not on point.

The State asserts that Bowes and Wright were well-qualified experts and that their proffered testimony was relevant, reliable, non-cumulative, and would have assisted the jury in understanding the evidence and making its determination. Presuming for the sake of argument that the foregoing is correct, the trial court still had discretion to limit both sides to one expert trial witness. The State has not argued or shown that Fanning was unable to testify regarding the matters that the State wanted Bowes and Wright to address. After carefully considering the record, we conclude that the trial court did not abuse its discretion in excluding the testimony of Bowes and Wright. *See TH Invests., Inc.,* 218 S.W.3d at 191 n. 20; *Paselk,* 293 S.W.3d at 608–09. Accordingly, we overrule the State's sole issue.[5]

### V. CONCLUSION

The State preserved error as to the trial court's exclusion of the proffered testimony by experts Bowes and Wright. The trial court did not abuse its discretion in excluding this testimony. Therefore, we affirm the trial court's judgment.

---

5. The trial court also excluded Bowes as an expert witness because he is not licensed as an appraiser in Texas, though he is licensed as an appraiser in Colorado. We need not and do not address this additional ground.