

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00459-CV

———————————————

BYRD JOHNSON JR., Appellant

V.

KARLETHA PAXTON, Appellee

———————————————

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. 21-0721-158

———————————————

Before Birdwell, Bassel, Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

This appeal arises from a bench trial in a divorce proceeding. In a single issue, Husband Byrd Johnson Jr. argues that the trial court violated his procedural-due-process rights by unfairly imposing time limits on the trial after Wife Karletha Paxton had already presented her case. We will affirm.

## I. BACKGROUND

Husband and Wife were married in October 2018. In January 2021, the couple separated, and Wife sued for divorce. Husband countersued. Because Husband and Wife have no children, the divorce proceedings focused on the division of property.

In June 2022, the trial court held a bench trial concerning the division of the marital estate.

Immediately before the trial began, there was an off-the-record discussion regarding Husband's motion to continue the trial so that the matter could be tried to a jury. The trial court ruled—on the record—that it was denying Husband's motion because a continuance would unduly delay the divorce proceeding and because Husband had not complied with Rule 216.[1] After Husband continued to argue for a

---

[1]Rule 216 provides, in relevant part, that "[n]o jury trial shall be had in any civil suit, unless a written request for a jury trial is filed . . . a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance" and that "[u]nless otherwise provided by law, a [jury] fee . . . must be deposited with the clerk of the court within the time for making a written request for a jury trial." Tex. R. Civ. P. 216.

continuance, the trial court reiterated that Husband had failed to comply with Rule 216's requirements and announced that "we're proceeding today."

After Wife was called to the stand to testify as the first witness, Husband announced that he had "a couple of preliminary matters" to address "before we proceed" with trial. Immediately after Wife was sworn in, Husband attempted to present an unfiled motion in limine. After Wife pointed out that the motion had not been filed, the trial court declined to consider it and directed Husband to "just make [his] objections to" any matters that he wanted to exclude during trial.

Wife's counsel then proceeded with his direct examination of Wife. During Wife's direct examination, the trial court announced that it would allow leading questions from both parties to save time.[2]

Husband's cross-examination of Wife spanned the lunch break, beginning in the morning and continuing into the afternoon.[3] When the trial court initially announced that it was time to break for lunch, it suggested that the trial would resume

---

[2]Later, during Wife's redirect examination, the trial court reiterated that it was relaxing the rule against leading questions for both parties to save time. *See* Tex. R. Evid. 611(a), (c) (providing that generally "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony" but that "[t]he court should exercise reasonable control over the mode . . . of examining witnesses . . . so as to . . . avoid wasting time").

[3]Although the trial transcript does not contain timestamps, Husband's counsel noted that "[i]t[ was] still morning" when she began her cross-examination of Wife and wished her a "good morning."

at 1:00 p.m., but at Husband's counsel's request, the court extended the lunch break to 1:30 p.m.

As Husband's cross-examination of Wife continued after lunch, the following exchange occurred:

| | |
|---|---|
| [Husband's Counsel]: | Judge, may I approach? |
| The Court: | You may. I haven't heard from your client yet though, so I don't -- |
| [Husband's Counsel]: | Your Honor, this is -- there's a lot that we're going through, so I don't -- |
| The Court: | Okay. Well, we're done -- we're done at about 4:30 so that gives me time to make a ruling. |
| [Wife's Counsel]: | And, Judge, I'll have time to -- she can spend as many [sic] time as she wants with my client, but I'll have time to question [Husband]? Okay. Thank you, Judge. |
| The Court: | Yeah. So just keep that in mind. We're running on a clock. |
| [Husband's Counsel]: | Is this -- |
| The Court: | Go ahead. |
| [Husband's Counsel]: | Your Honor, that's -- that would be why I requested a pretrial so that we could know what the issues were and how long this would take because we have a ton of documents to go through. And quite honestly, I don't think that we'll get through it today. |
| The Court: | Well, that's going to be an unhappy situation for you, but we're done today. So let's speed it up. |

4

Thus, the trial court made it clear that the trial would conclude at 4:30 p.m., but Husband did not object or request additional time. Rather, he continued cross-examining Wife.

Later during Husband's cross-examination of Wife, the following exchange occurred:

| | |
|---|---|
| The Court: | And I'm going to have to turn the witness back over. And you guys have five minutes to ask her questions and then we need to proceed with a different witness. So it's your witness at this point. |
| [Wife's Counsel]: | Yes, Judge. Ms. Paxton -- |
| Husband's Counsel: | Judge? |
| [Wife's Counsel]: | -- of the months that -- |
| The Court: | Yeah. |
| [Husband's Counsel]: | Judge, I didn't finish questioning the witness. |
| The Court: | Okay. |
| [Husband's Counsel]: | You didn't give me a time frame. And I think they went much longer than this on [Wife]. |
| The Court: | I don't know about that. And we've got to hear from your client. |
| [Husband's Counsel]: | Judge, they went from about -- roughly about 10 o'clock. But Your Honor didn't give me a time frame. We've not gone through -- |
| The Court: | Well, what -- okay. |
| [Husband's Counsel]: | I don't -- I don't -- |
| The Court: | Go ahead and ask more questions, but you're asking questions that don't seem -- |

5

| | |
|---|---|
| [Husband's Counsel]: | Let -- Judge, this is -- |
| The Court: | -- to inform me whatsoever. |
| | . . . . |
| [Wife's Counsel]: | -- just -- it's getting -- it's getting frustrating because the other side continues to lie to everybody, but now it needs to look like my client is not being honest. |
| The Court: | Stop. Stop. I'll disregard. I don't think I heard what was said prior.<br><br>But if your client wants to testify, that's great. If not, I'll just start taking the time away from him. |
| [Husband's Counsel]: | Judge, I don't even know how much time. Your Honor did not -- |
| The Court: | We've got -- |
| [Husband's Counsel]: | -- give us a time frame. |
| The Court: | -- two hours left. Approximately 20 minutes off of that to figure on break. So that gives us, what, an hour and 40 minutes? So that's . . . 50 minutes each side. That's what you've got. |
| [Husband's Counsel]: | They used more than 50 minutes on [Wife] alone, Your Honor. |
| The Court: | Sorry. I wasn't keeping a stopwatch on it. I thought you were going to move through this at a -- |
| [Husband's Counsel]: | Could we have more than 50 minutes -- |
| The Court: | No. |
| [Husband's Counsel]: | -- since they did use -- |

6

| The Court: | No. |
| [Husband's Counsel]: | -- more than 50 minutes on [Wife] alone? |
| (Judge gaveling) | |
| [Husband's Counsel]: | Bang it all you want to. I can speak across your bang. Bang all you want to. |
| The Court: | I'm sorry, Counsel? |
| [Husband's Counsel]: | Bang. This is not right. I'm just asking for time for my client, just like they had for theirs. |
| The Court: | And, ma'am, I answered you and now you're making inappropriate comments. Let's just ignore those comments and proceed. You've got 50 minutes. |
| [Husband's Counsel]: | On [Wife], Judge, or for the remainder of our time? |
| The Court: | For the remainder. I'm not hearing -- the last half hour you've spent on questions, I don't see where it has informed me at all. But if you want to spend it on her, that's fine. You just lose it on your client. |

Following this exchange—despite the trial court's guidance that Husband's previous half hour of questioning had not been informative and the court's attempt to move the trial along by giving each side only five more minutes to examine Wife—Husband continued his prolonged cross-examination of Wife.[4] Wife's counsel then engaged in additional redirect examination.

---

[4]Based on the trial court's time estimates, it appears that Husband cross-examined Wife for an additional 27 minutes after the trial court imposed the 50-minute time limits on each side.

Wife proceeded to call three more witnesses—LaTarsjah Thomas,[5] Husband, and Wife's counsel—each of whom was cross-examined by Husband's counsel.

After the presentation of all testimony and other evidence, the trial court made its ruling with the assistance and active participation of both parties. After the trial court concluded the evidentiary portion of the trial, Husband never gave any indication that he had additional witnesses or other evidence to present before the trial court made its decision.[6]

Ultimately, the trial court issued a decree based on its oral ruling, and this appeal followed.

## II. DISCUSSION

In his sole issue on appeal, Husband asserts that the trial court violated his procedural-due-process rights by imposing time limits on the parties after the trial had already begun. According to Husband, because Wife had already begun her evidentiary presentation before the time limits were established, the time limits

---

[5]Thomas, Husband's former business partner, testified regarding Husband's trucking business and the purchase prices received from the sales of certain trucks.

[6]Husband also elected not to file a motion for new trial in which he could have explained what witnesses or other evidence, if any, the trial court's time limits precluded him from presenting.

unfairly advantaged Wife by giving her more total time than Husband to present evidence. Husband's argument lacks merit.[7]

A trial court has broad discretion over the conduct of a trial and the exclusion of evidence. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015) (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001). In the exercise of this discretion, a trial court may, among other things, "control the presentation of evidence so as to avoid needless consumption of time." *In re M.A.S.*, 233 S.W.3d 915, 924 (Tex. App.—Dallas 2007, pet. denied); *see State v. Gaylor Inv. Tr. P'ship*, 322 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Every trial court has the inherent power to control the disposition of the cases on its docket 'with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Hoggett v. Brown*, 971 S.W.2d 472, 495 (Tex. App.—Houston [14th Dist.] 1997, pet. denied))); *see also* Tex. R. Evid. 611(a)(2). Though broad, the trial court's discretion in handling trials is not unfettered. *Gaylor Inv. Tr. P'ship*, 322 S.W.3d at 819. "The control given the trial judge must be exercised reasonably, and a party must be given a fair opportunity to present its case so that the factfinder may ascertain the truth." *In re Moreno*, No. 11-10-00353-

---

[7]Wife argues that Husband failed to preserve his sole issue by objecting when the trial court first imposed the time limits. However, because we reject Husband's sole issue on its merits, we need not decide whether it was properly preserved. *See In re A.A.*, No. 21-0998, 2023 WL 3910142, at *4 n.13 (Tex. June 9, 2023).

9

CV, 2010 WL 5059519, at *4 (Tex. App.—Eastland Dec. 10, 2010, orig. proceeding) (mem. op.).

When—as here—a decision will affect an individual's property rights, "[d]ue process requires . . . an opportunity to be heard at a meaningful time and in a meaningful manner." *Reynoso v. Dibs, US, Inc.*, 541 S.W.3d 331, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Tex. Workers' Comp. Comm'n v. Patient Advocs. of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004)). We determine what process is due based upon the practical requirements of the circumstances. *In re D.W.*, 498 S.W.3d 100, 112 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902 (1976)). Three factors are weighed: (1) the private interest affected by the proceeding or official action; (2) the countervailing governmental interest supporting use of the challenged proceeding; and (3) the risk of an erroneous deprivation of the private interest due to the procedures used. *In re B.L.D.*, 113 S.W.3d 340, 352 (Tex. 2003) (citing *Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903).

Given a trial court's broad discretion regarding the management of trials and the exclusion of evidence, we review a trial court's imposition of time limits at trial—and any exclusion of evidence resulting therefrom—under an abuse-of-discretion standard. *See In re B.W.S.*, No. 05-20-00343-CV, 2022 WL 2712494, at *3 (Tex. App.—Dallas July 13, 2022, no pet.) (mem. op.). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules

10

or principles. *Seliger v. Ethiopian Evangelical Church*, No. 03-14-00621-CV, 2016 WL 3677618, at \*2 (Tex. App.—Austin, July 7, 2016, no pet.) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Erroneous exclusion of evidence is reversible only if it probably resulted in an improper judgment or probably prevented the appellant from properly presenting his case to the court of appeals. *See* Tex. R. App. P. 44.1(a); *Monsanto Co. v. Davis*, 25 S.W.3d 773, 786 (Tex. App.—Waco 2000, pet. denied).

Based on the record before us, we cannot say that the trial court abused its discretion by imposing time limits on the parties during trial. Husband's due process complaint is based on two primary contentions: (1) that he was unaware that the case had to be completed in one day (and was therefore caught off guard by the trial court's imposition of time limits) and (2) that Wife was given more time than Husband to present evidence. However, the record does not support either of these contentions.

First, while the trial court never explicitly stated that the trial would be limited to one day until approximately midway through the proceeding, the record reflects that the parties were operating under that assumption. Shortly after going on the record to announce that it was denying Husband's motion for continuance, the trial court stated that "given the Court's dockets post-COVID and the issues presented with . . . trying to reschedule, the Court is proceeding without [a] jury *today*." [Emphasis added.] After Husband continued to argue in favor of his request that the

11

proceeding be reset so that it could be tried to a jury, the trial court asked whether Wife was opposed, to which she replied, "We are 100 percent opposed because we need this case *done today.*" [Emphasis added.] After hearing additional arguments from Husband regarding his motion for continuance, the trial court reiterated its basis for denying the motion and announced that "we're proceeding *today.*" [Emphasis added.] Moreover, early on in the proceeding, the trial court stated that it would allow both parties to ask leading questions "[f]or time's sake," a clear signal that the trial was limited in duration. Further, when the trial court explicitly stated that the trial would be "done today" and instructed Husband to "speed it up," Husband did not object or express any surprise. Thus, we cannot conclude that Husband was unfairly surprised by the trial's time constraints.

Second, the record does not support Husband's claim that Wife was given more time than he was to present evidence. In his brief, Husband asserts that "counsel for [Wife] did not face an initial time constraint and had his client testify from around 10:00 a.m. until well after returning for lunch at 1:30." But Husband fails to point out that a significant portion of Wife's time on the stand—comprising over 60 pages of the reporter's record—was spent on Husband's cross-examination.[8] The record shows that Husband began cross-examining Wife before lunch and

---

[8]Husband also ignores the time that he spent—both on and off the record—arguing for a continuance and presenting his unfiled motion in limine prior to the imposition of any time limits.

12

continued well into the afternoon. Indeed, Husband persisted in cross-examining Wife even after the trial court stated that Husband's previous half hour of questioning had not been informative and attempted to move the trial along by giving each side only five more minutes to examine Wife.

The only references in the record to Wife's having been given more time are Husband's counsel's unverified, self-serving claims, each of which was disputed or questioned by the trial court. For example, in response to Husband's counsel's assertion that "I think they went much longer than this on [Wife]," the trial court stated, "I don't know about that." And later, after the trial court imposed 50-minute time limits on each side and Husband's counsel complained that "[t]hey used more than 50 minutes on [Wife] alone," the trial court responded that it had not been "keeping a stopwatch on it." Because the record does not include timestamps, Husband's assertion that Wife received more time simply cannot be verified.

Even if Husband could show that the trial court abused its discretion by imposing unfair time limits, reversal would still not be warranted because there is nothing in the record to suggest that Husband was harmed by the time restrictions. *See* Tex. R. App. P. 44.1(a); *JLG Trucking*, 466 S.W.3d at 161. Husband asserts in a conclusory fashion that his "attorney had to limit her witnesses and her evidence" because of the time limits imposed by the trial court. But Husband has not identified any specific witnesses or other evidence that he was prevented from presenting because of the time limits, much less shown that the exclusion of such evidence

13

probably led to an improper result. *See JLG Trucking*, 466 S.W.3d at 161. Indeed, the record reflects that (1) Husband offered and the trial court admitted ten exhibits into evidence—eight of which were admitted during Wife's testimony, (2) Husband testified at length during trial, and (3) Husband's counsel cross-examined every witness. Significantly, Husband's counsel never objected or complained at the end of trial that she had additional evidence or witnesses that would bear on the trial court's decision but that the time constraints had precluded her from presenting. Instead, Husband and his counsel actively participated in the trial court's deliberation, including explaining to the trial court what property belonged to Husband.

Husband cites *D.W.*, 498 S.W.3d at 106–118, in support of his argument that he was harmed by the trial court's time restrictions, but as Husband acknowledges, the facts of that case were very different. *D.W.* involved a suit affecting the parent–child relationship (SAPCR) in which both the mother and father were incarcerated in Pennsylvania at the time of trial. *Id.* at 106–07. After the trial court rendered a judgment terminating father's parent–child relationship with D.W., father appealed on the grounds that, inter alia, he had been denied due process because, unlike mother, he had been unable to participate in the trial via videoconference[9] or to consult with his attorney either before or during trial. *Id.* at 108–12. The court of appeals agreed

---

[9]Due to technical limitations at the correctional facility where mother and father were being held, they could not both appear at trial by videoconference at the same time. *D.W.*, 498 S.W.3d at 109. Thus, while mother had been able to actively participate at trial, father had not. *Id.* at 109–110.

that father's due process rights had been violated and concluded that he had been harmed because the trial court had prevented father from presenting any evidence by "effectively den[ying him] any method of meaningful participation at trial" and because father had been prevented from showing "what that evidence may have been" by having effectively been denied counsel during the period in which he could have filed a motion for new trial. *Id.* at 118.

The facts of this case are nothing like those presented in *D.W.* Unlike the father in *D.W.*, Husband was not prevented from communicating with his attorney either before or during trial. To the contrary, he was able to actively participate in the trial, to present evidence, to cross-examine all witnesses, and even to testify himself. Further, unlike the father in *D.W.*, who was prevented from filing a motion for new trial because he could not communicate with his attorney, Husband simply elected not to file such a motion, which would have allowed him to show what evidence, if any, the trial court's time limits prevented him from presenting. Thus, unlike the father in *D.W.*, Husband has not shown that the complained-of trial procedure "probably caused the rendition of an improper judgment" or "probably prevented [Husband] from properly presenting [his] case to the court of appeals." *See* Tex. R. App. P. 44.1(a).

15

Because Husband has failed to show that the trial court abused its discretion by imposing time limits at trial or that he was harmed by the imposition of these time limits,[10] we overrule his sole issue.

### III.  CONCLUSION

Having overruled Husband's sole issue, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  August 10, 2023

---

[10]Having determined that the trial court did not abuse its discretion by imposing time limits and that Husband has not shown any evidence of harm, we likewise conclude that Husband has failed to show that he was denied procedural due process under the *Eldridge* factors.  *See Eldridge*, 424 U.S. at 335, 96 S. Ct. at 903. Specifically, because Husband has failed to point to any specific evidence that the time limits prevented him from presenting, much less how such evidence would have impacted the trial court's decision, he has not shown that there was any "risk of an erroneous deprivation of [his property] interest[s] through the procedures used" at trial.  *See id.* at 335, 96 S. Ct. at 903.  Because Husband has failed to show that the time limits created such a risk, he has likewise failed to show that the trial court violated his procedural due process rights by imposing these time limits.